# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MYRTLE GORDON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| CITY OF PHILADELPHIA, ET AL., | : | NO. 07-5039 |
| Defendants. | : | |
| | : | |
| | : | |

## MEMORANDUM

**Tucker, J.**                                                                                                                          **April ___, 2010**

After a bench trial in this matter on March 15, 2010, and pursuant to Fed. R. Civ. P. 52(a), the Court makes the following Findings of Fact:

1.      This is an action for damages in connection with the demolition of real property owned by Plaintiff, Myrtle Gordon, located at 3442 N. 16th Street, Philadelphia, Pennsylvania ("the Property").

2.      At the time that Plaintiff purchased the Property, it was subject to several License and Inspection ("L&I") violations, causing the City of Philadelphia ("the City") to designate the Property as "Unsafe" within the meaning of the Philadelphia Property Maintenance Code, Section PM-307-0 Unfit Structures and Equipment.

3.      Plaintiff was provided with an L&I violation notice from the City dated August 15, 2005, which indicated that if the violations were not corrected, the City could eliminate the unsafe condition(s) by repair or demolition using its own forces or by contract. The notice also informed Plaintiff that a permit would be required in advance of any work to demolish or rehabilitate the structure.

4.      On or about January 28, 2007, Plaintiff entered into a contract with Defendant Gary Flowers and his company, GMF Interior Installations, for the completion of "All Major Work as per License and Inspection Violation Notice." The contract price was $64,000.00 based upon the fact that the work contemplated included both renovation and removal of violations.

5. Plaintiff paid Defendant a deposit in the amount of $32,000.00, followed by weekly installment payments, for a total of $56,666.00 paid to Defendant.

6. Defendant began working on the property almost immediately after he and Plaintiff entered into the contract. However, Defendant was forced to cease operations in February because he began the work without the necessary permit in violation of the code.

7. While the contract in question was silent as to which party, Plaintiff or Defendant, was required to obtain the permit, Defendant admitted at trial that he informed Plaintiff that he would obtain a permit, and further, that it was a mistake on his part not to do so. Defendant also admitted that he was aware that it is unlawful to perform the work specified in the contract without the required permit.

8. Plaintiff's expert testified that it is standard in the construction industry for a contractor to obtain the Building Permit, but that even where the parties have reached a different agreement regarding the application for a permit, it is negligent and unlawful to begin construction without the necessary permits.

9. Prior to ceasing operations at the Property, Defendant and two to three (2-3) workers hired by Defendant stuccoed the right side of the Property, and partially dismantled the rear wall of the Property to prevent its collapse.

10. After having to cease operations at the Property, Defendant did ultimately file an Application for a Building Permit on April 24, 2007. However, the application was improperly filed, as it only sought a permit for renovations, but did not request permission to address the violations.

11. On August 29, 2007, a Building Permit was issued to Defendant when he went to the License and Inspections Department to specifically request that the application be converted from one focusing on renovations to one which would permit him to perform work to correct the violations.

12. By the time that the necessary Building Permit was issued, the Property had already been demolished on or about August 17, 2007, pursuant to an order of the Chief of Contractual Services.

13. On November 29, 2007, Plaintiff filed suit in this matter alleging breach of contract, negligence, and unjust enrichment. Plaintiff also sought compensatory and punitive damages, and interest and costs of suit.

14. Defendant testified that he spent $38,000.00 of the funds paid by Plaintiff on labor, materials, and other costs prior to the demolition of the Property. However, despite being on notice of the need to provide an accounting of his expenditures relating to the contract as early as December 2009, Defendant was not prepared with receipts or any other documentation at trial.

15. Defendant's testimony that he spent $38,000.00 towards performance of the contract, which ultimately was not fully performed, indicates that $18,666.00 of the $56,666.00 was not in dispute. Despite this knowledge, Defendant has not returned any of the undisputed portions of the funds to Plaintiff since this litigation began in November 2007.

16. While it has been established that Plaintiff did not receive proper notice regarding the demolition of the Property, it is equally significant that had a Building Permit been approved in a timely fashion, the Property would not have been demolished.

## Conclusions of Law

17. The contract between Plaintiff and Defendant was breached when Defendant did not fully perform under the contract through the completion of each itemized task.

18. The evidence presented at trial established that Defendant was negligent in beginning construction on the Property without a Building Permit as required by law. Defendant's testimony confirms that he was aware that he engaging in unlawful conduct when he began work on the Property without the required permit.

19. Upon entering into the contract with Plaintiff, Defendant was required to perform all work under the contract in accordance with the relevant laws, and the only manner in which he could

lawfully fulfill his obligations was by performing his work under the contract with the necessary permits. Therefore, Defendant had a duty to ensure that the necessary permit was ultimately issued, regardless of whether he was actually responsible for obtaining it; otherwise he could not lawfully begin working.

20. Defendant breached his duty when he did not ensure that a Building Permit had been issued prior to beginning work on the Property.

21. Defendant's failure to ensure that the proper Building Permit was issued before beginning work caused undue delay in the progress of the work on the Property, and ultimately resulted in the demolition of the Property.

22. If a proper application had been filed in January of 2007 or shortly thereafter, a Building Permit could have been issued in as little as two (2) hours. The work could then have been completed within sixty (60) days or a reasonable time thereafter, which would have negated the need for demolition.[1]

23. Defendant was unjustly enriched. Although by Defendant's own admission, at a minimum, $18,666.00 is the amount of the contract expenses paid by Plaintiff that are undisputed, Defendant has yet to return all or any portion of the undisputed funds to Plaintiff. A party who receives a benefit at the expense of the other party to an agreement is required to account for it, either by returning it in kind or paying a sum of money. Restatement (Second) of Contracts §370. Here, Defendant received a benefit of $56,666.00 at Plaintiff's expense. In addition to the City of Philadelphia's failure to provide Plaintiff with adequate notice, Defendant's failure to ensure that a proper permit was issued in order to fulfill his obligations under the contract was a substantial factor in the demolition of Plaintiff's property.

---

[1] Defendant repeatedly emphasizes that the work could not have been completed within sixty (60) days because the gutting of the walls inside the Property revealed that additional work was necessary. However, this argument is irrelevant. With a proper Building Permit in place, the need for additional time to complete the contract would not have been a legal issue necessarily, but merely one to be negotiated amongst the parties. In other words, the Court does not rely on failure to complete the contract within sixty (60) days as evidence of the breach at issue. Rather, the issue is that the contract was never fully performed even though nearly the entire contract price was paid. The Court relies on the lack of full performance or even substantial performance to find that the contract was breached.

This renders Defendant liable for Plaintiff's loss.

24. Defendant was unjustly enriched in the amount of $56,666.00. While Defendant alleges that $38,000.00 was used for materials, costs, and labor, Defendant has offered no evidence apart from his own testimony that this was in fact the amount spent. The Court finds that Defendant's testimony lacks credibility, due to his failure to provide any receipts or accounting for any performance on this contract, as well as his admission that he did not declare the $56,666.00 paid by Plaintiff on his income tax return. Therefore, the Court accepts the evidence presented by Plaintiff and determines that Defendant was unjustly enriched in the amount of the total expenses paid by Plaintiff.

25. Plaintiff is entitled to punitive damages. Under Pennsylvania law, punitive damages are appropriately awarded when a defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others. Phillips v. Cricket Lighters (Phillips II), 883 A.2d 439, 445 (Pa. 2005). Plaintiffs' burden is ultimately to "adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to 'intentional, willful, wanton or reckless conduct....'" Id. at 446 (quoting SHV Coal, Inc. v. Continental Grain Co., 587 A.2d 702, 704 (Pa. 1991)). In the present case, Plaintiff's evidence established that Defendant began performance of the contract in an unlawful manner. Moreover, Plaintiff demonstrated that Defendant has knowingly retained undisputed funds due and owing to Plaintiff for nearly three years without any stated intention of returning the funds. Defendant's conduct is egregious, as it demonstrates a reckless indifference to Plaintiff's rights. Consequently, the Court will award Plaintiff punitive damages in the amount of ten percent (10%) of the expenses paid by Plaintiff, specifically five thousand six hundred sixty-six dollars and sixty cents ($5,666. 60).

26. Plaintiff is also awarded interest plus costs of suit.

An appropriate order follows.